The Honorable Paul Miller State Senator Post Office Box 488 Melbourne, Arkansas 72556
Dear Senator Miller:
I am writing in response to your request for an opinion on the following matter:
 In your opinion, does an officer in the county sheriff's office have the authority to use paint ball guns to load and shoot pepper balls for the purpose of controlling crowds and for other uses deemed necessary to protect law enforcement officers and the general public?
RESPONSE
I cannot offer a simple "yes" or "no" answer to your question. Arkansas law does not directly address the use of "paint ball guns" that shoot "pepper balls." Your question must therefore be analyzed under the test for whether the use of such weaponry would be considered excessive force. Whether excessive force is used in a pre-arrest or investigatory stop is a factually intensive determination in which a court must determine whether the officer acted in an objectively reasonable manner considering all attendant circumstances. It is possible that the use of a pepper-ball gun could be appropriate, but it is also possible that use of such techniques would be excessive force dependent on the surrounding circumstances.
Arkansas law provides that law enforcement officers are authorized to use physical force or to threaten to use deadly force to effect an arrest or to defend the officer or a third party from what the officer reasonably believes to be the use of or imminent use of force while effecting an arrest or preventing an escape. A.C.A. § 5-2-610(a) (Repl. 1997). Under Arkansas law, deadly force is statutorily defined as force that can readily cause death or serious physical injury under the circumstances of the force's use. A.C.A. § 5-2-601(5) (Repl. 1997). Deadly force is only authorized when the law enforcement officer reasonably believes 1) that deadly force is necessary to arrest or to prevent the escape of someone the officer reasonably believes has committed or attempted to commit a felony, or 2) that deadly force is necessary to defend the officer or a third party from what the officer reasonably believes to be the use or imminent use of deadly force.[1] A.C.A. § 5-2-610(b) (Repl. 1997).
From my research, Arkansas law and regulations do not directly address the use of weaponry such as the "pepper ball launchers" in your opinion request. In the absence of direct authorization to use this type of weaponry to be used, I will attempt to offer some guidance as to the legal standards for determining whether the use of such weaponry would constitute the use of excessive force.
The analysis of whether excessive force is used depends on whether the force in question is used in an arrest and pre-detention situation on a free citizen or whether it is used in a penological situation on an incarcerated person. The former requires an analysis under theFourth Amendment of the United States Constitution while the latter is analyzed under the Eighth Amendment. In your request for an opinion, you specifically mention crowd control purposes as well as to protect law enforcement officers or the general public. I interpret these references to imply that the pepper ball weaponry would be used in an arrest or pre-detention situation. Consequently, the discussion herein will focus on the Fourth rather than the Eighth
Amendment.
The United States Supreme Court has held that an excessive force claim in the context of an investigatory stop, arrest, or other pre-detention situations, implicates the Fourth Amendment. Graham v. Connor,490 U.S. 386, 395 (1989); see also Tennessee v. Garner, 471 U.S. 1, 9 (1985) ("[t]he intrusiveness of a seizure by means of deadly force is unmatched"); and Wilson v. Spain, 209 F.3d 713, 715 (8th. Cir. 2000) (quoting Graham, supra). Specifically, the Supreme Court stated, "[We] hold that all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under theFourth Amendment and its reasonableness standard[.]" Graham, supra at 395. In determining the reasonableness of a particular use of force, a mechanical or precise definition is not used. Rather, the nature and quality of the intrusion is balanced against the governmental interests in the situation. See Op. Att'y Gen. 2004-188 (quoting Graham, supra at 396). The reasonableness of a particular seizure is viewed in the perspective of a reasonable officer on the scene, rather than from hindsight in the safety of a judge's chambers. Id.
You do not specify the nature of the weapon to be used beyond describing the ammunition as "pepper balls." Generally speaking, pepper-ball launchers project a container of capsaicin derived irritant via pneumatic pressure.[2] The U.S. Department of Justice specifically lists the Pepperball brand launcher from Jaycor in a research guide it publishes. U.S. Dept. of Justice, Office of Justice Programs, National Institute of Justice: Department of Defense Nonlethal Weapons and Equipment Review: A Research Guide for Civil Law Enforcement and Corrections (2004). Additionally, the FN303 model produced by FN Herstal has received significant media attention in the past six months because a young woman was fatally injured in Boston, Massachusetts when she was accidentally struck in the eye with a FN303 projectile during a public disturbance.See Press Release, Boston Police Department, Update on Snelgrove Investigation (Nov. 12, 2004) (available at http://www.cityofboston.gov/news/default.aspx?dept=106) (visited on July 18, 2005); and Police Admit Baseball Death Blame, BBC News, UK Edition, October 22, 2004, (available at http://news.bbc.co.uk/1/hi/world/americas/3944365.stm) (visited on July 18, 2005). There is a wide range of effectiveness and power between different pepper-ball launchers.[3] The differing impact force of various launchers would be a fact to be considered by a court in determining whether the force used was warranted. The Boston incident serves as a reminder that "less-lethal" means of crowd control may still be lethal in certain circumstances.
Pepper-ball launchers have the capacity for lethal force under particular circumstances, and the question of whether using the weapon amounts to excessive force would be determined under all the attendant circumstances. Clearly, whether an officer followed any precautions and instructions as to the proper use of such weapons would be considered in determining the level of force as well as its reasonableness.[4] For example, the Little Rock Police Department uses Pepperball brand launchers, described above, for certain crowd control situations. The use of these weapons is governed by the LRPD General Order 303, Use of Force. While the use of pepper ball launchers is not specifically addressed in G.O. 303, the use of O.C. chemical irritants as a less lethal deterrent is authorized in general. See G.O. 303, § F(1). A court would consider whether a law enforcement officer had acted in compliance with a departmental policy in determining whether excessive force was used.
As I have noted above, the determination of whether the use of a pepper-ball launcher is excessive force is a factually intensive question that will require full knowledge and analysis of all the attendant circumstances, including the specific weapon used, the method of use, any departmental policies regarding its use, whether such policies were followed, and the nature of the weapon's target.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh
[1] Act 1994 of 2005 amends A.C.A. § 5-2-610(b)(1) to read that a law enforcement officer is authorized to use deadly force when the officer reasonably believes that it is necessary "[t]o effect an arrest or to prevent the escape from custody whom he reasonably believes has committed or attempted to commit a felony and is presently armed and dangerous[.]" Act 1994 of 2005, § 491. Act 1994 does not contain an emergency clause and will be effective on August 12, 2005. See Op. Att'y Gen. 2005-110.
[2] Capsaicin active payloads are also referred to as capsaicin II, PAVA, red pepper extract, oleoresin capsicum, OC, and nonivamide. Exposure to the capsaicin derived payloads causes temporary acute pain and a reddening irritation of the skin and, if inhaled, the mucous membranes of the upper respiratory tract. See U.S. Dept. of Justice, Office of Justice Programs, National Institute of Justice, Oleoresin Capsicum: Pepper Spray as Force Alternative (1994).
[3] For example, the above referenced FN303 produces approximately two and a half times the impact of the Pepperball brand launcher. Kinetic Energy is one-half of mass times the square of velocity, or KE = ½mv^2. In this situation, 8.5g at 90 meters per second for the FN 303 impacts with a Kinetic Energy of approximately 34 Joules or 25 footpounds of impact. (1/2(8.5g * (90m/s*90m/s))). In comparison, the Pepperball brand launchers utilize a 3g projectile also launched at approximately 90 meters per second. This results in approximately 12 Joules or 9 footpounds of impact. (1/2(2.0g * (90m/s* 90m/s))).
[4] For example, the Herstal website in describing the FN 303 notes, "For safety reasons, never aim towards face, throat, or neck." Http://www.spa-simrad.com/fn303launcher.htm (visited on July 7, 2005).